NO. 04-1478
(Judge Firestone)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

CAPITOL INDEMNITY CORP.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:
HELEN HENNINGSEN
Office of General Counsel
Department of Veterans Affairs
Milwaukee, WI

June 3, 2005

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . 3

1. The Surety, Having Paid Only Under Its Payment Bond, Cannot Maintain An Action Against The Government In This Court To Recover The Amounts It Paid Pursuant To That Bond . . . . . . . . . . 3

A. The Court Of Federal Claims Is A Court Of Limited Jurisdiction . . . . . . . . . . 3

B. There Is No Privity Between A Non-Takeover Surety And The United States . . . . . . . . . . 5

C. Given The Lack Of Privity Between It And The United States, The Surety's Equitable Subrogation Claim Fails To State A Claim . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . 12

## TABLE OF AUTHORITIES

### CASES

Admiralty Constr., Inc. v. Dalton,
156 F.3d, 1217 (Fed. Cir. 1998) .......... 5

Aetna Cas. & Surety v. United States,
845 F.2d 971 (Fed. Cir. 1988) .......... 5

Aetna Casualty & Surety Co. v. United States,
228 Ct. Cl. 146, 655 F.2d 1047 (1981) .......... 4

American Ins. Co. v. United States,
62 Fed. Cl. 151 (2004) .......... 10

Argonaut Ins. Co. v. United States,
193 Ct. Cl. 483, 434 F.2d 1362 (1970) .......... 9, 11

Balboa v. United States,
775 F.2d 1158 (Fed. Cir. 1985) .......... 6, 9

Banks v. Garrett,
901 F.2d 1084 (Fed. Cir. 1990) .......... 11

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) .......... 6

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) .......... 4

Fidelity & Deposit Co. v. United States,
31 Fed. Cl. 540 (1994) .......... 5

Fireman's Fund Ins. Co. v. United States,
909 F.2d 495 (Fed. Cir. 1990) .......... 5, 9

Fireman's Fund v. United States,
313 F.3d 1344 (Fed. Cir. 2002) .......... 7

Fisher v. United States,
__F.3d__, 2005 WL 545195 (Fed. Cir. Mar. 9, 2005) .......... 3

First Nat'l Bank in Houston v. United States,
350 U.S. 902 (1955) ........ 11

Globe Indem. Co. v. United States,
84 Ct. Cl. 587 (1937) ........ 10

Henningsen v. United States Fid. & Guar. Co.,
208 U.S. 404 (1908) ........ 6

Insurance Company of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) ........ PASSIM

Library of Congress v. Shaw,
478 U.S. 310 (1986) ........ 4

National Leased Housing Assoc. v. United States,
105 F.3d 1423 (Fed. Cir. 1997) ........ 5

National Sur. Corp. v. United States,
132 Ct. Cl. 724, 133 F. Supp. 381 (1955) ........ 11

National Surety Corp. v. United States,
118 F.3d 1542 (Fed. Cir. 1997) ........ 5

Pearlman v. Reliance Ins. Co.,
371 U.S. 132 (1962) ........ 6

Prairie State Bank v. United States,
164 U.S. 227 (1896) ........ 6, 7

Ransom v. United States,
17 Cl. Ct. 263, (1989), aff'd, 900 F.2d 242 (Fed. Cir.1990) ........ 11

Royal Indem. Co. v. United States,
208 Ct. Cl. 809, 529 F.2d 1312 (1976) ........ 9

Terran v. Secretary of Health & Human Svcs,
195 F.3d 1302 (Fed. Cir. 2000) ........ 3

Trinity Universal Ins. Co. v. United States,
382 F.2d 317 (5th Cir. 1967), cert. denied, 390 U.S. 906 (1968) ........ 8

United States Fid. & Guar. Co. v. United States,
201 Ct. Cl. 1, 475 F.2d 1377 (1973) .......... 9

United States Fid. & Guar. Co. v. United States,
230 Ct. Cl. 355, 676 F.2d 622 (1982) .......... 9

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983), cert. denied, 465 U.S. 1065 (1984) .......... 4

United States v. Munsey Trust Co.,
322 U.S. 234 (1947) .......... 8

United States v. Testan,
424 U.S. 392 (1976) .......... 3, 4

United States v. White Mountain Apache Tribe,
537 U.S. 465 (2003) .......... 3

Westech Corp. v. United States,
20 Cl. Ct. 745 (1990) .......... 8

## STATUTES

United States Codes

5 U.S.C. § 702 .......... 6

28 U.S.C. §1331 .......... 6

28 U.S.C. § 1491 .......... 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAPITOL INDEMNITY CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1478 |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the United States Court of Federal Claims, defendant respectfully requests that the Court to dismiss the complaint because it fails to state a claim upon which relief can be granted, given the fact that plaintiff is neither in privity with the Government, nor is the plaintiff equitably subrogated to the rights of a contractor who does have privity. In support of this motion, we rely upon the pleadings, the exhibits attached thereto, and the following brief.

DEFENDANT'S BRIEF

Question Presented

1. Whether the complaint fails to state a claim upon which relief can be granted, because the surety is not equitably subrogated to a party in privity with the Government.

STATEMENT OF FACTS

In September of 2002, the Department of Veterans Affairs ("DVA") entered into a contract with R&T Contractors ("R&T") to replace ARF chillers, a type of air conditioning equipment, in the DVA's animal research laboratory in Milwaukee, Wisconsin. Compl. ¶ 4. The

total initial contract price was $579,257. Compl. ¶ 4.

Capitol Indemnity Corporation ("CIC"), as surety, provided payment and performance bonds for the project in the penal sums of $579,257. Compl. ¶ 5. The bonds, which were submitted to the DVA, contained language which stated: "all contract funds relating to this project are to be sent to Northern Escrow, Inc. ["Northern'] for distribution." Compl. ¶ 6B; Ex. 2A & 2B.[1] R&T began on-site performance around December, 16, 2002.

The first three progress payments, totalling $342,166, or about 59% of the original contract price, were sent directly to R&T. Compl. ¶ 8A-8C. The remaining payments were made to Northern, Compl. ¶ 9, after an assignment of claims instrument was submitted to DVA,. R&T substantially completed performance in April 2003 and the work was accepted by DVA in January of 2005. At no time did CIC finance completion of the project or execute a takeover agreement with the Government to complete construction performance.

R&T did not pay several subcontractors and suppliers; pursuant to its payment bond, CIC, as surety, was required to make payments on behalf of R&T to those subcontractors. Compl. ¶ 10. CIC obtained a default judgment in state court against R&T's owners, Ricky and Tria Hunt in the amount of $117, 268. Capitol Indemnity Corp. v. Hunt, 2004cv00049 (Dane County, WI 2004). Mr. and Ms. Hunt, the personal guarantors of the bonds, later filed for bankruptcy. See In re: Ricky Hunt & Tria Hunt, 04-33165m (Bankr. E.D. Wis. 2004). CIC now seeks reimbursement, based upon a theory of equitable subrogation, of $113,556 it claims it paid to the subcontractors.

---

[1] The bonds submitted to the DVA were signed by the attorney-in-fact, but were otherwise identical to the bonds submitted by CIC as exhibits, including inclusion of the modification language.

SUMMARY OF ARGUMENT

A surety which paid subcontractors only under the payment bond obligation is subrogated only to the rights of the subcontractors. Such a surety is therefore not in privity with the United States and cannot bring a claim against the United States under the Tucker Act.

ARGUMENT

I. The Surety, Having Paid Only Under Its Payment Bond, Cannot Maintain An Action Against The Government In This Court To Recover The Amounts It Paid Pursuant To That Bond

A. The Court Of Federal Claims Is A Court Of Limited Jurisdiction

The United States Court of Federal Claims is a court of limited jurisdiction. Terran v. Secretary of Health & Human Svcs, 195 F.3d 1302, 1309 (Fed. Cir. 2000). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief.[2] United States v. Testan, 424 U.S. 392, 399 (1976); Insurance Company of the West v. United States, ("ICW") 243 F.3d 1367, 1372 (Fed. Cir. 2001).

Congressional consent to suit in this Court, a waiver of the Government's traditional

---

2 In United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003), the Supreme Court opined that when the Tucker Act waives sovereign immunity for suits of the type generally encompassed by a claim, jurisdiction exists for purposes of surviving a motion to dismiss for lack of jurisdiction. The Federal Circuit recently reiterated that while jurisdiction is determined at the outset of litigation, disposition under 12(b)(6) is proper where the facts alleged do not come within the money-mandating statute upon which jurisdiction is premised. Fisher v. United States, __F.3d__, 2005 WL 545195 (Fed. Cir. Mar. 9, 2005), superceding 364 F.3d 1372 (Fed Cir. 2004). Based upon this guidance, the United States maintains that the instant claim fails to state a claim upon which relief can be granted. This conclusion follows from the fact that the surety's complaint, on its face, states a type of claim over which this Court has jurisdiction, which appears to meet the criterion established in White Mountain. Having said that, the Government maintains that jurisdiction is lacking over this particular claim, because the Tucker Act does not waive immunity for claims by sureties under the facts presented here. Therefore, the issue of jurisdiction is inextricably linked to the failure to state a claim, for which reason, it is discussed at the outset of this motion.

immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; ICW, 243 F.3d at 1372.

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Under that statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

The Tucker Act confers jurisdiction upon the Court whenever a substantive right of recovery against the United States exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). A claimant, therefore, must look beyond this jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution, which can fairly be construed as mandating compensation, to state a claim within this Court's jurisdiction. Connolly, 716 F.2d at 885. Thus, jurisdiction to entertain plaintiff's complaint exists in this Court only if the plaintiff can establish that its cause of action lies within the well-established limitations of this Court's jurisdiction. The Tucker Act undisputably contains a waiver of the Government's sovereign immunity to be sued by its contractors or by those who "stand in the shoes" of its contractors. ICW, 243 F.3d at 1375. The question is the extent to which that waiver extends.

B. There Is No Privity Between A Non-Takeover Surety And The United States

To establish jurisdiction in this Court based upon contract, a plaintiff must establish there is privity between it and the Government. National Leased Housing Assoc. v. United States, 105 F.3d 1423, 1435-47 (Fed. Cir. 1997). The right to sue may rest either on the equitable doctrine of subrogation, or alternatively, upon a contract right of its own. Fidelity & Deposit Co. v. United States, 31 Fed. Cl. 540, 542-43 (1994); CIC does not allege it has any independent contractual rights with the United States, and it has none. See National Surety Corp. v. United States, 118 F.3d 1542, 1545 (Fed. Cir. 1997) ("The surety's rights and obligations are not based on third-party beneficiary concepts"); Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 500 (Fed. Cir. 1990) (a surety "is neither the intended third-party, nor the direct, beneficiary" of the bonded contract); Admiralty Constr., Inc. v. Dalton, 156 F.3d, 1217, 1222 (Fed. Cir. 1998) (holding surety not in privity with the Government by having posted a bond on a Government contract ); Aetna Cas. & Surety v. United States, 845 F.2d 971, 975 (Fed. Cir. 1988) (same). Therefore, if the surety has privity, it is through the equitable doctrine of subrogation.

The United States Court of Appeals for the Federal Circuit has identified only "two circumstances in which a surety may succeed to the contractual rights of a contractor against the [G]overnment: when the surety takes over contract performance or when it finances completion of the defaulted contract." ICW, 243 F.3d at 1370 (citing, *inter alia*, Admiralty Constr.,156 F.3d at 1222). This succession, or assignment of rights by operation of law, appears to be the basis upon which the "non-contractual doctrine of equitable subrogation" is founded. ICW, 243 F.3d at 1221. Absent takeover of the contract or financing completion of the contract via its performance bond, the surety is not equitably subrogated to the rights of the prime contractor and

is, instead, left only with the rights that a subcontractor may have against the prime contractor.

In Balboa v. United States, 775 F.2d 1158 (Fed. Cir. 1985), the Federal Circuit addressed the Claims Court's jurisdiction over equitable subrogation claims. In Balboa, the Court relied upon three Supreme Court cases – Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962); Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404 (1908); and Prairie State Bank v. United States, 164 U.S. 227 (1896) – to support its conclusion that the Court possessed jurisdiction over a claim of equitable subrogation. Balboa, 775 F.2d at 1161.

More recently, in Insurance Company of the West, the United States Court of Appeals for the Federal Circuit concluded that, after the decision in Department of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999),[3] the Court could no longer rely upon those three cases to find a waiver of sovereign immunity for subrogation claims. ICW, 243 F.3d at 1371-72. This conclusion followed from the Supreme Court's opinion that

> None of these cases [Prairie State Bank, Henningsen, and Pearlman] involved a question of sovereign immunity, and, in fact, none involved a subcontractor directly asserting a claim against the Government. Instead, these cases dealt with disputes between private parties over priority to funds which had been transferred out of the Treasury and as to which the Government had disclaimed any ownership.

Blue Fox, 525 U.S. at 265. In view of the private nature of the litigants in those cases, the

---

[3] In Blue Fox, there was no surety, because no Miller Act bonds were required by the contract. Nevertheless, the subcontractor that brought the suit occupied a position, *vis-a-vis* the Government, that is closely analogous to the surety's position in this case. Blue Fox was a subcontractor that had not been paid by its prime contractor. The Army, after receiving notice that the subcontractor was not being paid, nevertheless paid the prime contractor. The subcontractor sued the Army in district court seeking an equitable lien, predicating jurisdiction upon the Administrative Procedures Act ("APA"). 5 U.S.C. § 702, and 28 U.S.C. §1331. The Supreme Court found that the waiver of sovereign immunity in the APA did not extend to a claim for an equitable lien.

question of waivers of sovereign immunity for such claims was never addressed.[4]

In Insurance Company of the West, the Court of Appeals defined the waiver of sovereign immunity found in the Tucker Act in so far as it relates to a surety. The scope of that waiver was based upon the conclusion that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d at 1375 (emphasis added). The Court also stated that the subrogee, as an assignee by operation of law, has "the same right[s]" as the Government contractor, "with its advantages and disadvantages." Id. at 1374 (emphasis added). Given the requirement that the surety "step into the shoes of a government contractor," id. at 1375, there is little room to argue that the Tucker Act's waiver extends beyond a takeover surety or one who effectively completes the project by financing its completion under its performance bond. CIC did neither, for which reason it is not equitably subrogated to the rights of R&T, the prime contractor. See Fireman's Fund v. United States, 313 F.3d 1344, 1352 (Fed. Cir. 2002) (even where a surety takes over performance, the surety is not subrogated to the rights of the taken over contractor for pre-takeover claims).

CIC alleges in its complaint that it paid the subcontractors and suppliers pursuant to the payment bond issued on behalf of R&T, nothing more. This singular act did not convert the surety's actions into anything other than payment pursuant to its payment bond obligations. As such, the surety's actions fall within the

---

4 Based upon the opinion in Insurance Company of the West, there may be some question as to whether the funds at stake in Prairie State Bank had in fact been "transferred out of the Treasury." ICW, 243 F.3d at 1372 n. 2. This possible factual issue, however, did not affect the Federal Circuit's conclusion that "the Supreme Court did not directly address the sovereign immunity issue in Prairie State Bank." Id .

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the [G]overnment.

ICW, 243 F.3d at 1371. This conclusion is consistent with the Supreme Court's decision in United States v. Munsey Trust Co., 322 U.S. 234 (1947), upon which the court of appeals relied, and in which the Supreme Court concluded

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that labors and materialmen do not have enforceable rights against the United States for their compensation.

332 U.S. at 241. Thus, where the surety simply pays the subcontractors and suppliers, its recourse is the same as that of the subcontractors and suppliers: against the prime contractor, not the Government. The surety cannot acquire by subrogation what the subcontractor, whose rights it claims, did not have. See Munsey Trust, 332 U.S. at 242.

The apparent rationale for distinguishing between, on the one hand, performance bond or take over sureties and on the other, sureties that merely satisfy the payment obligations of the prime contractor, lies in the benefit derived by the Government from the acts of the surety. The purpose of a surety agreement is "simply to insure completion of the government's project . . . at the contract price." Westech Corp. v. United States, 20 Cl. Ct. 745, 751 (1990) (citing Trinity Universal Ins. Co. v. United States, 382 F.2d 317, 321 (5th Cir. 1967), cert. denied, 390 U.S. 906 (1968). Once the contract is complete, the Government's interest in assuring performance no longer requires the protection afforded by the bond. Moreover, where the work is complete, but the suppliers and subcontractors are unpaid, "the [G]overnment suffers no damage." Munsey Trust, 332 U.S. at 244. "By definition and agreement, the surety protects the Government's

interest, not the other way around." Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990). Because CIC stands in the shoes of the subcontractors, whose claims it paid, it lacks privity with the United States and its complaint therefore fails to state a claim.

C. Given The Lack Of Privity Between It And The United States, The Surety's Equitable Subrogation Claim Fails To State A Claim

The gist of CIC's complaint is that contract funds should have been paid to it instead of R&T, either because of constructive knowledge of possible contractor default or because of the language on the bonds directing payment to a third party. Compl.¶ 8A(2)(b); ¶ 14. Given the unambiguous language in ICW, CIC cannot claim that the Government abused its discretion in executing any potential stakeholder duties, Compl. ¶ 13, because it is not in privity with the United States, nor is it equitably subrogated to such a party.

The surety's substantive claim echoes the language of cases such as Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985); United States Fid. & Guar. Co. v. United States, 230 Ct. Cl. 355, 676 F.2d 622 (1982); Royal Indem. Co. v. United States, 208 Ct. Cl. 809, 529 F.2d 1312 (1976); United States Fid. & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973); and Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), in which the Court previously held that the Government acts as a stakeholder with respect to unpaid contract funds once notified of possible default or where the Government fails to administer the contract by its terms in such a way that the risk to the surety is increased.

In light of the Federal Circuit's ruling in ICW, such stakeholder duties enunciated in Balboa and its progeny did not survive with respect to a claim by a payment bond surety. CIC is subrogated only to the rights of the subcontractors and suppliers it paid pursuant to its payment

bond obligations. In ICW, the Court reviewed the common law rights of an assignee with respect to contract rights: "[T]he assignee of a claim stepped into the shoes of the assignor for all purposes: 'an assignment transfers to the assignee the same right held by the assignor, with its advantages and disadvantages.'" 243 F.3d at 1374 (citing Restatement (Second) of Contracts at § 340 cmt. a). It concluded that the doctrine of sovereign immunity did not change the common law, which allowed assignees to step into the shoes of the assignor. Id. Based upon this analysis, the Court held that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." Id. at 1375. This waiver of sovereign immunity, however, is limited in that "the party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted." Globe Indem. Co. v. United States, 84 Ct. Cl. 587, 595 (1937). Thus, because a subcontractor cannot bring a claim against the United States, neither can the one who stands in the shoes of the contractor.

Permitting recourse by the surety against the Government, where the surety neither takes over nor finances completion of contract performance, converts the Government into an insurer for the surety against losses precipitated by the contractor with whom the surety entered into a contract. It is "not the Government's responsibility . . . to divine the surety's thinking process or to act as a nanny for the surety." American Ins. Co. v. United States, 62 Fed. Cl. 151, 155 fn 5 (2004). Rather, the question of loss under the payment bond should be a matter to be resolved between the surety and the contractor that it bonded and that caused the loss. Based upon the superior knowledge and position of the surety, shifting the obligation to the surety to resolve such

matters is neither unfair nor unreasonable.[5] The surety agreed, for a price, to accept the risk inherent in insuring the performance and payment by a contractor and occupied a better position than the Government in deciding to whom it would issue bonds. Cf., Ransom v. United States, 17 Cl. Ct. 263, 269 (1989) (information related solely to an individual contractor's ability to perform is better known by surety than Government), aff'd, 900 F.2d 242 (Fed. Cir. 1990).

The surety bore the risk that it was paid to bear when it was paid the premiums for issuing the bonds. Thus, the surety in this case did not complete the contract performance of its bonded contractor nor did it effectively complete the contract performance by paying for completion of contract performance under a performance bond. As such, CIC is not in privity with the Government and further fails to meet the criteria established to bring an equitable subrogation claim against the Government. Given this fact, the inescapable conclusion is that there is no basis for this Court to exercise jurisdiction over the claim. This failure equates with a failure to state a claim upon which this Court can grant relief, for which reason the claim should be dismissed. See, e.g., Banks v. Garrett, 901 F.2d 1084, 1087-88 (Fed. Cir. 1990) (dismissing military pay claim where reservist did not meet statutory requirements of money-mandating statute).

---

5 In Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), the Court of Claims reiterated the "well-established principle that the subrogation right claimed by plaintiff is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others." Id., 434 F.2d at 1367 (citing National Sur. Corp. v. United States, 133 F. Supp. 381, 132 Ct. Cl. 724, cert. denied, sub nom., First Nat'l Bank in Houston v. United States, 350 U.S. 902 (1955)).

## CONCLUSION

For the reasons set forth above, this Court should dismiss plaintiff's complaint pursuant to RCFC 12(b)(6).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/JAMES M. KINSELLA
JAMES M. KINSELLA
Deputy Director

s/TARA K. HOGAN
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:
HELEN HENNINGSEN
Office of General Counsel
Department of Veterans Affairs
Milwaukee, WI

June 3, 2005

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on this 3rd day of JUNE, 2005 a copy of the foregoing "MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/Tara K. Hogan