NO. 04-1478
(Judge Firestone)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

CAPITOL INDEMNITY CORP.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

OF COUNSEL:
HELEN HENNINGSEN
Office of General Counsel
Department of Veterans Affairs
Milwaukee, WI

September 1, 2005

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . i

TABLE OF AUTHORITIES . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS . . . . . 1

ARGUMENT . . . . . 1

I. The Plaintiff, Who Did Not Pay To Complete Contract Performance Or Execute A Takeover Agreement With The United States Is Not Equitably Subrogated To The Rights Of The Contractor And For That Reason, Fails To State A Claim . . . . . 1

A. *Pearlman* Does Not Provide A Basis For CIC's Claim After *Blue Fox* . . 2

B. The Trial Court's Decision In *Insurance Company Of The West* Is Neither Binding Nor Persuasive Authority . . . . . 5

II. CIC Has No Other Basis For An Equitable Subrogation Claim . . . . . 8

A. The Complaint Fails To State A Claim Because Any Non-Discretionary Stakeholder Duty Does Not Arise Until Completion Of Contract Performance . . . . . 9

B. The Complaint Fails To State A Claim Because CIC Never Provided Notice of Default As Required By Pre-*ICW* Cases Such As *Balboa* And Ransom . . . . . 10

CONCLUSION . . . . . 12

## TABLE OF AUTHORITIES

### CASES


Admiralty Constr. Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) .......... 4, 7

Aetna Casualty & Surety Co. v. United States,
845 F.2d 971 (Fed. Cir. 1988) .......... 7

Balboa Insurance Company v. United States,
775 F.2d 1158 (Fed. Cir. 1985) .......... 11, 12

Car Carriers, Inc. v. Ford Motor Co.,
745 F.2d 1101 (7th Cir. 1984) .......... 8

Casa De Cambio ComDiv S.A. De C.V., v. United States,
291 F.3d 1356 (Fed. Cir. 2002) .......... 6

Crest A Apartments, Ltd. II v. United States,
52 Fed. Cl. 607 (2002) .......... 8

Department of the Army v. Blue Fox,
525 U.S. 255 (1999) .......... 4, 7, 10

Fireman's Fund Insurance Company v. England,
313 F.3d 1344 (Fed. Cir. 2002) .......... 7

Henningsen v. United States Fidelity & Guar. Co.,
208 U.S. 404 (1908) .......... 4

Insurance Company of the West v. United States,
55 Fed. Cl. 529 (2003) .......... 5, 6

Insurance Company of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) .......... 2, 4, 6

International Fidelity Insurance Company v. United States,
41 Fed. Cl. 706 (1998) .......... 9, 10

Lawmaster v. Ward,
125 F.3d 1341 (10th Cir. 1997) ........................................ 8

Lumbermens Mutual Cas. Co. v. United States,
2005 WL 1983688 (Aug. 17, 2005) ........................................ 12

Pearlman v. Reliance Insurance Company,
371 U.S. 132 (1962) ........................................ 2, 3, 4, 5

Prairie State Bank v. United States,
164 U.S. 227 (1896) ........................................ 4

Ransom v. United States,
900 F.2d 242 (1990) ........................................ 12

Transamerica Insurance Company v. United States,
989 F.2d 1188 (Fed. Cir. 1993) ........................................ 5

Transamerica Premier Insurance Company v. United States,
32 Fed. Cl. 308 (1994) ........................................ 9, 10

United States Fidelity & Guaranty Co. v. United States,
201 Ct. C 475 F.2d 1377 (1973) ........................................ 3, 8, 10

United States v. Munsey Trust Co.,
322 U.S. 234 (1947) ........................................ 2

West Coast General Corp. v. Dalton,
39 F.3d 312 (Fed. Cir. 1994) ........................................ 6

Westech Corp. v. United States,
20 Cl. Ct. 745, 750 (1990) ........................................ 7

## STATUTES

**United States Codes**

39 U.S.C. 101-5605 ........................................ 8

40 U.S.C. 3133(b) ........................................ 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAPITOL INDEMNITY CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1478 |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

On July 29, 2005, Capitol Indemnity Corporation ("CIC") responded to the Government's motion to dismiss for failure to state a claim for equitable subrogation. On that same date, the Surety Association of America ("SAA") filed its amicus brief in this case. Defendant files the following reply and respectfully renews its request that the Court dismiss the complaint, pursuant to Rule of Court of Federal Claims ("RCFC") 12(b)(6), for failure to state a claim. In support of this reply, we rely upon the following brief and the facts as alleged in CIC's complaint.[1]

ARGUMENT

I. The Plaintiff, Who Did Not Pay To Complete Contract Performance Or Execute A Takeover Agreement With The United States Is Not Equitably Subrogated To The Rights Of The Contractor And For That Reason, Fails To State A Claim

The Government moved to dismiss CIC's claim for equitable subrogation because CIC, a

---

1 These facts are assumed to be true solely for the purpose of this motion. Should the complaint survive this motion to dismiss, we reserve the right to contest all facts alleged in the complaint, not previously admitted in the answer.

payment bond surety, is not in privity, and does not stand in the shoes of a party in privity, with the United States. CIC alleges in its complaint that it paid the subcontractors and suppliers pursuant to the payment bond issued on behalf of R&T. Compl. ¶ 10. This singular act did not convert the surety's actions into anything other than payment pursuant to its payment bond obligations. As such, the surety's actions fall within the

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the [G]overnment.

Insurance Company of the West v. United States, 243 F.3d 1367, 1371 (Fed. Cir. 2001) ("ICW"). This conclusion is consistent with the Supreme Court's decision in United States v. Munsey Trust Co., 322 U.S. 234 (1947), upon which the court of appeals relied, and in which the Supreme Court concluded

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that labors and materialmen do not have enforceable rights against the United States for their compensation.

332 U.S. at 241. Thus, where the surety simply pays the subcontractors and suppliers, its recourse is the same as that of the subcontractors and suppliers: against the prime contractor, not the Government. The surety cannot acquire by subrogation what the subcontractor, whose rights it claims, did not have. See Munsey Trust, 332 U.S. at 242.

A. *Pearlman* Does Not Provide A Basis For CIC's Claim After *Blue Fox*

In its response brief, CIC points to Pearlman v. Reliance Insurance Company, 371 U.S. 132 (1962), as a basis for its claim that it, as a payment bond surety, can assert an equitable subrogation claim against the United States. Pl. Resp. at 12-13.

The issue in Pearlman was whether the surety could assert rights to Government-retained contract funds after payment to the subcontractors and completion of contract performance. The Supreme Court stated the general proposition that "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." 371 U.S. at 136-37.

In an en banc decision in United States Fidelity & Guaranty Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973) ("USF&G"), the Court of Claims concluded that there appeared to be tension between the Supreme Court's decisions in Munsey Trust and Pearlman. The Court perceived conflict because Munsey Trust provided that the subcontractors and suppliers had no enforceable rights against the Government. 475 F.2d at 1381. At the same time, the Court read Pearlman as holding that the surety was entitled to the benefit of all the rights of the laborers and material men whose claim it paid and those of the contractor whose debt it paid. 475 F.2d at 1382. In attempting to reconcile these decisions, the Court of Claims concluded that the surety, which pays subcontractors, obtains its substantive claim from the subcontractors it paid and its jurisdictional right to sue from the bonded contractor, which was in privity with the Government. 475 F.2d 1382.

The precedent on which CIC and the amicus, SAA, rely are premised on the continued viability of Pearlman as a waiver of sovereign immunity for the payment bond claims of sureties. If this premise fails, then the decisions employing it as the cornerstone of their analysis fail with it.

To the extent that the Claims Court and the Court of Federal Claims decisions employing this Pearlman analysis have any precedential value, they are of limited value. This result obtains

from the fact that, despite reliance upon these cases for the proposition that jurisdiction exists in this Court for equitable subrogation claims by sureties, that reliance clearly is misplaced. Nothing is more clear than the Supreme Court's language that "[n]one of these cases ...[Prairie State Bank v. United States, 164 U.S. 227 (1896), Henningsen v. United States Fidelity & Guar. Co., 208 U.S. 404 (1908) and Pearlman] involved a question of sovereign immunity." Department of the Army v. Blue Fox, 525 U.S. 255, 265 (1999).

In other words, these three cases and their progeny no longer provide the basis for finding a waiver of sovereign immunity, which is necessary to sustain an action in this Court. ICW, 243 F.3d at 1372. Instead, the Court's analysis must once again focus upon the requirement that the claimant be either a contractor or one who stands in the shoes of such a contractor because of performing the contract. Moreover, the apparent conflict that the Court of Claims perceived in USF&G, in hindsight, was nonexistent, because while Munsey Trust clearly dealt with the question of sovereign immunity, the Supreme Court has declared that Pearlman did not. Blue Fox, 525 U.S. at 265.

The result is that the analysis used to base jurisdiction in surety cases has changed. Jurisdiction can no longer be found based solely upon Pearlman. Blue Fox, 525 U.S. at 265; ICW, 243 F.3d at 1371-72. Instead, jurisdictional determinations must focus upon the bonded contractor and the rights of that contractor to which the surety is subrogated. This conclusion is the complement to the Court of Appeals' conclusion that "a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." ICW, 243 F.3d at 1371; see also Admiralty Constr. Inc. v. Dalton, 156 F.3d 1217,

1222 (Fed. Cir. 1998) ("to maintain a claim for equitable subrogation, a surety must either take over contract performance or finance the completion of the defaulted contract under its performance bond").

If the surety takes over the contract or completes performance of the contract pursuant to its performance bond, so that it assumes the duties of the contractor, then jurisdiction exists in this Court over the surety's claims. In Transamerica Insurance Company v. United States, 989 F.2d 1188 (Fed. Cir. 1993), the court of appeals, as did this Court, found that jurisdiction existed over the equitable subrogation claims of a surety, which had paid under its performance bond to complete a project following the default of its bonded contractor. The court of appeals set forth the "general rule . . . that 'a surety who pays the debt of another is entitled to all of the rights of the person he paid to enforce his right to be reimbursed.'" Id. at 1194. If this is in fact "the general rule," as the Government maintains that it is, then jurisdiction based upon equitable subrogation exists only where the surety has provided benefit to the Government on behalf of the bonded contractor, as discussed in both Munsey Trust and Insurance Company of the West.

Absent such a benefit flowing from the surety to the Government, which invests the contractor, and through it the surety, with a right against the Government, equitable subrogation jurisdiction for the surety's claims does not exist. For this reason, Pearlman does not provide CIC with a basis for its equitable subrogation claim.

B. The Trial Court's Decision In *Insurance Company Of The West* Is Neither Binding Nor Persuasive Authority

The Court of Federal Claims' opinion in Insurance Company of the West on remand does not assist CIC. In its response, plaintiff argues that Insurance Company of the West v. United

States, 55 Fed. Cl. 529 (2003) ("ICW III") should control the issues presented in this case. Pl. Resp. at 12. The effect CIC attributes to ICW III is incorrect. Unlike the decisions of the former Court of Claims, which are binding precedent upon this Court, Claims Court General Order No. 1 (Oct. 7, 1982), reprinted in 1 Cl. Ct. xxi, the decisions of the Court of Claims and this Court are not binding upon the Court. See Casa De Cambio ComDiv S.A. De C.V., v. United States, 291 F.3d 1356, 1364 n.1 (Fed. Cir. 2002) (noting that prior decisions of the Court of Federal Claims do not bind the Court of Federal Claims.). Accord, West Coast General Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court").

However, the decision in ICW III is unhelpful to CIC for another reason. The surety in ICW III financed completion of the contract. 55 Fed. Cl. at 540. The claim pursued by the surety in ICW III was for losses it sustained under its performance bond. 55 Fed. Cl. at 532 n.5. Indeed, the principle that the Court of Federal Claims held out on remand was that "a surety, *after financing or completing the performance* of a defaulted contractor, discharges the outstanding claims of the subcontractors, it may subrogate to the rights both of the defaulted contractor and the subcontractors." 55 Fed. Cl. at 538 (emphasis added). Thus, unlike CIC, the surety in ICW III was subrogated to the claims of its bonded contractor because it had either taken over contract performance or had financed completion of the defaulted contract and was thus in privity with the United States. ICW 243 F.3d at 1370.

To the extent ICW III is persuasive, it appears that, considering the facts of that case, the result supports the Government's position, rather than CIC's. This follows from the Court of Appeals' view that "to maintain a claim for equitable subrogation, a surety must either take over

contract performance or finance the completion of the defaulted contract under its performance bond." Admiralty Constr., 156 F.3d at 1222. Nevertheless, while the result in ICW III may support the Government's position in this matter, we respectfully disagree with the analysis employed by the Court and believe that CIC's reliance upon the ICW III analysis is misplaced.

CIC's attempts to minimize the difference between a subrogation claim based upon a performance bond, as in ICW's case, and a claim based upon a payment bond as "splitting hairs," Pl. Resp. at 13; this unfortunately misses the most basic, yet fatal, point to its complaint for equitable subrogation: CIC does not stand in the shoes of a party in privity with the United States. That a surety should be treated differently depending upon the type of bond under which payment is made is neither novel nor unique. See Aetna Casualty & Surety Co. v. United States, 845 F.2d 971, 975 (Fed. Cir. 1988) (distinguishing a surety's right to recover funds depending upon type of bond under which payment was made.); Westech Corp. v. United States, 20 Cl. Ct. 745, 750 (1990).

This analysis is consistent with the Federal Circuit's decisions in such cases. In Fireman's Fund Insurance Company v. England, 313 F.3d 1344 (Fed. Cir. 2002), the court easily concluded that jurisdiction existed over a claim by a surety that took over contract performance or financed completion of the contract. 313 F.3d at 1351.

Since Munsey Trust, the Courts have made clear that subcontractors, and those who stand in the shoes of subcontractors, are not in privity with the United States. After the Supreme Court's clarification in Department of Army v. Blue Fox, it is clear that sovereign immunity has not been waived for a the claims of a surety whose claims are derived solely from a subcontractor or supplier. In its amicus brief, the SAA notes that subcontractors still have equities that are

superior to any claim by a defaulting contractor. SAA Br. at 10. To the extent the Government owes the subcontractors an equitable obligation, the Government is released from the obligation when the payment bond surety pays the subcontractors. USF&G, 201 Ct. Cl. 1, 475 F.2d at 1381. While subcontractors have equities in relation to the prime contractor, these are not equities that can be enforced against the Government, absent an explicit waiver of sovereign immunity by Congress. SAA's own citations cases that have held that the Postal Reorganization Act, 39 U.S.C. §§ 101-5605 waives immunity for subcontractor suits against the United States Postal Service, underscore this point. The surety is, of course, always permitted to enforce the subcontractor's equities against the party for whom it paid: the contractor. 40 U.S.C. § 3133(b).

II. CIC Has No Other Basis For An Equitable Subrogation Claim

CIC argues that its complaint states an equitable subrogation claim because the language on the bond directing payment to a third party escrow company made the DVA a stakeholder of contract funds or, alternatively, provided notice of contractor default to the agency.[2] Pl. Resp. at 10. Both arguments ignore the basic barrier to CIC's success in maintaining suit in this Court: its lack of privity with the United States. However, its lack of privity notwithstanding, CIC's

---

[2] In its response to the United States' motion to dismiss, CIC attached several new exhibits, including deposition testimony from R & T's bankruptcy proceeding, and correspondence between counsel. Because this is a 12(b)(6) proceeding, CIC should not be permitted to supplement its complaint. See Lawmaster v. Ward, 125 F.3d 1341, 1345 n. 2 (10th Cir. 1997) (refusing to consider claim not raised in complaint); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); Crest A Apartments, Ltd. II v. United States, 52 Fed. Cl. 607, 613 (2002) (refusing to consider claim asserted in summary judgment motion but not in complaint).

complaint still fails to make a claim for equitable subrogation.

A. The Complaint Fails To State A Claim Because Any Non-Discretionary Stakeholder Duty Does Not Arise Until Completion Of Contract Performance

The plaintiff's first argument is that the language in the bond directing payment to Northern Escrow "became part of the contract . . .which made the VA a stakeholder" and removed the Government's discretion to continue payments to the contractor. Pl. Resp. at 10. CIC relies on two cases, Transamerica Premier Insurance Company v. United States, 32 Fed. Cl. 308 (1994) and International Fidelity Insurance Company v. United States, 41 Fed. Cl. 706 (1998), for support of this proposition. Because the Government's role solely as a stakeholder does not arise until contract performance is complete, and because CIC's claim is based on the first three contract payments, CIC cannot rest its equitable subrogation claim on a stakeholder theory.

In Transamerica, the surety notified the Government during the course of performance that it had received claims for payment from the subcontractors. The surety asserted its right to remaining funds and consequently requested that payment be made jointly to it and the prime contractor. 32 Fed. Cl. at 310. The Government issued a modification to the contract which changed the mailing address to that of the surety. 32 Fed. Cl. at 311. After successful completion of contract performance by the contractor, the Government sent the last check to the contractor, in violation of the terms of the modified contract. The Court determined that, after contract performance, the Government's only duty was to "ensure proper disbursal of the final check." 32 Fed. Cl. at 316. This is because where the Government no longer has an interest in timely contract performance, and the surety seeks funds retained by the Government, the

Government's obligations are substantially different than during contract performance when the Government has considerable leeway in balancing its own interests in timely contract completion against possible harm to the surety. See USF&G, 201 Cl. Ct. 1, 475 F.2d at 1384. The Court found that the Government had breached its duty as stakeholder of the retained contract funds.

In International Fidelity, the Court found that, during the course of performance, the Government contractually acknowledged its duty to exercise care with remaining contract funds after, upon the contractor's request, the Government modified the contract to make payment jointly to the surety and the contractor. 41 Fed. Cl. at 716. Thus, the Court found that payment in violation of contract provisions was not an exercise of reasonable discretion since the Government had undertaken to limit its own discretion by modifying the contract. 41 Fed. Cl. at 719.

CIC seeks to conflate the legal holdings of Transamerica and International Fidelity into a holding that any "payment instruction" by the surety divests the Government of its discretion to continue payments to the contractor. Pl. Resp. at 10. This ignores both the holdings of these two cases and the holdings of prior Federal Circuit case law. This analysis notwithstanding, the Government does not believe either Transamerica or International Fidelity can provide CIC with a basis for a waiver of sovereign immunity for its payment bond case in light of Blue Fox and ICW.

B. The Complaint Fails To State A Claim Because CIC Never Provided Notice of Default As Required By Pre-*ICW* Cases Such As *Balboa* And *Ransom*

CIC's alternative argument that its complaint states a claim for equitable subrogation

because the language on the bond was "continuing prior requisite notice to the VA that, upon R&T's actual or threatened default, all payments were then to be made to [the escrow company]." Pl. Resp. at 10. This theory is without support. Under Balboa Insurance Company v. United States, 775 F.2d 1158 (Fed. Cir. 1985), a case of questionable authority for payment bond cases, in light of the Federal Circuit's decision in ICW, the Federal Circuit previously had held that an equitable subrogation claim could arise where: (1) the surety gave the Government notice that the contractor was in danger of default on the contract and (2) after notice, the Government abused its discretion in continuing payment to the prime contractor. Balboa, 775 F.2d at 1164.

Balboa provided eight factors for the Court to consider whether the agency abused its discretion in continuing payments to the contractor. The Balboa analysis is directed at whether the contractor was willing and able to complete the contract work, 775 F.2d at 1164, not whether the contractor had failed to pay its subcontractors or suppliers. The purpose of notice is to reasonably ensure that the Government does not pay the contractor who is already in default, thereby denying the performance bond or takeover surety the funds necessary to complete the work. The default which gives rise to the Government's duty before contract completion, therefore, is the contractor's default on its Government contract, not default upon its contracts with its subcontractors and suppliers. Therefore, the Balboa analysis does not have application to CIC's payment bond claim.

Even if Balboa could remain a basis for claims by payment bond sureties such as CIC, the complaint does not allege the elements of a Balboa claim. The complaint fails to state a claim because it lacks the essential element of explicit notification by the surety of the contractor's

default under the Government contract. Balboa, 775 F.2d at 1164; Ransom v. United States, 900 F.2d 242 (1990) ("before any obligation arises to withhold or divert funds, the Government must be notified that the sureties believe the contractor is in default and cannot complete the contract"); see, e.g., Lumbermens Mutual Cas. Co. v. United States, 2005 WL 1983688 (Aug. 17, 2005) (dismissing performance bond surety's claim to equitable subrogation where surety never notified Government that contractor was approaching default).

Although the complaint makes reference to the Government's "notice of possible default" by virtue of the progress reports submitted by the contractor, Compl. ¶¶ 3-4, nowhere does CIC allege that it notified the Government that R&T was in danger of defaulting on the Government contract. Even assuming the language on the bonds sufficed as notice of impending contractor default, CIC logically could not provide notice to the contractor that R&T was in default (or even danger of default) *prior* to commencement of contract performance.

Therefore, because CIC's complaint does not allege that it ever requested that the Goverment retain money on its behalf due to R&T's actual or impending default under the contract, the complaint fails to state a claim upon which relief can be granted. However, the Court does not need to reach this analysis because CIC, as a payment bond surety, lacks privity with the United States. This lack of privity is an absolute bar to CIC's equitable subrogation claim.

## CONCLUSION

For the reasons set forth above, this Court should dismiss plaintiff's complaint pursuant to RCFC 12(b)(6).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/James M. Kinsella
JAMES M. KINSELLA
Deputy Director

S/Tara K. Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:
HELEN HENNINGSEN
Office of General Counsel
Department of Veterans Affairs
Milwaukee, WI

September 1, 2005

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on this 1st day of September, 2005 a copy of the foregoing "REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/Tara K. Hogan